DOVER CORPORATION *et al.*, Plaintiffs-Appellants, v. THE DEPART-
MENT OF REVENUE, Defendant-Appellee.

First District (5th Division)   No. 1—93—3340

Opinion filed March 31, 1995.—Rehearing denied April 28, 1995.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Robert J. Cunningham, Michael J. Wilczynski, and David A. Waimon, of counsel), for appellants.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

The Illinois Department of Revenue (Department) issued notices of deficiencies to plaintiff Dover Corporation (Dover) and five of its subsidiaries, proposing income tax deficiencies for the taxable years ending in 1984 and 1985 in the amount of $176,914. Dover and its five subsidiaries filed protests, arguing that certain corporate income liabilities for 1984 and 1985 were taxable outside of Illinois and that certain types of Dover's income should be classified as nonbusiness income. The administrative law judge found in the Department's favor and the circuit court affirmed. We also affirm.

Dover is a Delaware corporation with a commercial domicile in New York. Dover is the parent corporation of plaintiffs Dieterich Standard Corporation, Tipper Tie, Inc., Universal Instruments Corporation, Dover Elevator International Company, and Dover Elevator Company. (Dover and these five corporations are referred to as Dover Taxpayers.) The Dover Taxpayers, along with other Dover subsidiaries, were members of a single unitary business group, the Dover Unitary Group. Dover is comprised of 13 divisions. The two divisions relevant to the instant proceedings are the Groen division (Groen) and the Bernard division (Bernard). Groen and Bernard

engage in the manufacture and sale of fabricated metal products. Groen manufacturers and sells food service products (kettles, pans, etc.) and food process equipment for industrial use. In 1984 and 1985, one of Groen's manufacturing facilities was located in Elk Grove Village, Illinois. Bernard manufactures and sells welding accessory products and, in 1984 and 1985, had a facility in Belcher, Illinois.

Through Groen and Bernard, Dover sold its products and conducted its activities in 26 States and 13 foreign countries. The parties agree that the employees of Groen and Bernard engaged in activities in these destination States that exceeded the mere solicitation of sales as defined in Public Law 86—272 (15 U.S.C. §§ 381 through 384 (1988)).

The Department's auditor determined that sales from the Groen and Bernard divisions to certain States and foreign countries should be thrown back to Illinois to be included in the numerator of the sales factors for the Dover Taxpayers. The jurisdictions in which sales were thrown back are divided into two categories. Category 1 consists of jurisdictions in which Groen and Bernard made sales and where certain members of the Dover Unitary Group, although not the Dover Taxpayers, filed tax returns and paid income tax. The category 1 States are:

> Alabama, Florida, Georgia, Idaho, Maryland, Minnesota, Missouri, New Hampshire, North Carolina, Oregon, Pennsylvania, Rhode Island, South Carolina, Utah, Virginia, West Virginia, and Wisconsin.

Category 2 consists of jurisdictions in which the Groen and Bernard divisions made sales, but neither Dover nor any member of the Dover Unitary Group filed a tax return or paid taxes. The category 2 jurisdictions are:

> Alaska, Hawaii, Iowa, Maine, Montana, Nebraska, Nevada, South Dakota, Vermont, Australia, Canada, Denmark, Finland, France, Ireland, Italy, Japan, Mexico, Netherlands, Sweden, United Kingdom, and West Germany.

The administrative law judge found that sales in North Dakota should not be thrown back to Illinois since Dover presented evidence that it paid taxes there after the audit. The administrative law judge also found that sales from South Dakota and Nevada should not be thrown back to Illinois because during 1984 and 1985, neither of those States had enacted an income tax and the activities of Groen and Bernard employees exceeded the mere solicitation of sales in those States. The sales made by Groen and Bernard in the other category 1 and category 2 States were thrown back to the Illinois sales numerator since their activities in those destination States exceeded

solicitation, they were subject to an income tax in those States and the Dover Taxpayers had not demonstrated that they paid taxes in those States. The administrative law judge also found that certain royalty income was business income. The circuit court affirmed.

The issues Dover raises on appeal are: (1) whether the Department improperly included in the Illinois sales factor those sales from Illinois to purchasers in destination States where Dover had not paid taxes; (2) whether Dover is considered taxable in certain destination States by virtue of the payment of income taxes by another corporate member of the Dover Unitary Group; and (3) whether certain royalty income from the licensing of technology is apportionable business income.

■ Dover first contends on appeal that the Department improperly determined that certain sales shipped from the Bernard and Groen Illinois facilities to purchasers in category 1 and category 2 States are throwback sales includable in the Illinois sales factor for apportionment purposes. The Uniform Division of Income for Tax Purposes Act (the Uniform Act), adopted in 1957 as a model act, sets forth guidelines for apportioning income when a corporation does business in different States. (7A U.L.A. 331 (1985).) The Illinois apportionment statute is modeled after the Uniform Act and provides that when a corporation conducts business in more than one State, a three-factor formula is utilized to determine what proportion of income is attributable to the various States. (35 ILCS 5/304(a) (West 1992).) The Illinois Supreme Court has described the operation of section 304(a)'s three-factor formula:

> "The formula-apportionment method prescribed by section 304(a) first requires that the taxpayer compute three factors, which are based on his property, payroll, and sales. The property factor is a fraction whose numerator is the taxpayer's Illinois property, and whose denominator is all of the taxpayer's property. The payroll and sales factors are computed similarly (*i.e.*, Illinois payroll/all payroll; Illinois sales/all sales). Section 304(a) then requires the taxpayer to average the three factors, with the resulting fraction being the taxpayer's 'apportionment factor.' The section 304(a) apportionment factor is the percentage of the taxpayer's business income that will be taxed in Illinois." (*General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 370, 469 N.E.2d 1067, 1070.)

Section 304(a)'s apportionment provision depends on voluntary self-reporting by the taxpayer.

■ The parties agree that sales of tangible personal property are excluded from the numerator of the Illinois sales factor if the property is delivered or shipped from a business location within Illinois

and the seller is taxable in the destination State. (See 35 ILCS 5/304(a)(3)(B)(i), (a)(3)(B)(ii) (West 1992).) The parties disagree, however, as to the meaning of the term taxable. Section 3—303(f) of the Illinois Income Tax Act (Tax Act), which mirrors section 16 of the Uniform Act (7A U.L.A. § 16 (1985)), provides that for purposes of allocation, a taxpayer is taxable in another State if:

"(1) In that state he is subject to a net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax; or

(2) That state has jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or does not." (35 ILCS 5/303(f) (West 1992).)

In addition, Public Law 86—272 prohibits a State from imposing a net income tax on a foreign taxpayer if its only in-State business activity is the solicitation of sales. (15 U.S.C. §§ 381 through 384 (1988).) Thus, States have jurisdiction to tax interstate companies when their in-State business activities exceed mere solicitation. The parties agree Bernard's and Groen's activities in the destination States exceed mere solicitation.

Dover claims that according to the plain language of section 303(f), a taxpayer is taxable in the destination State if either: (1) the taxpayer actually is subject to and pays income tax in that State; *or* (2) the State possesses the jurisdiction to impose a tax on the taxpayer, regardless of whether the taxpayer in fact pays the tax or not. The Department, however, contends that the taxpayers in this case are not taxable in the destination State unless the taxpayers actually filed tax returns and paid income taxes in those States.

An administrative agency's interpretation of the law it administers must be afforded substantial weight. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 447 N.E.2d 295.) An agency's interpretation represents an informed source for ascertaining legislative intent. (*Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 348 N.E.2d 161.) The Department's interpretation of section 303(f) is embodied by Illinois income tax regulation 100.3200(a), which provides in pertinent part:

"A taxpayer claiming to be taxable in another state under the tests set forth in (1) must establish not only that under the laws of such state is he subject to one of the specified taxes, but that he, in fact, pays such tax. If a taxpayer is subject to one of the taxes specified in (1) but does not, in fact, pay such tax, such taxpayer may not claim to be taxable in the state imposing such tax under the test set forth in (2). On the other hand, if a taxpayer is not subject in a given state to any of the taxes specified in (1) but such

taxpayer establishes that his activities in such state are such as to give the state jurisdiction to subject him to a net income tax, then under the test set forth in (2), the taxpayer is taxable in such state, notwithstanding the fact that such state has not enacted legislation subjecting him to such tax. In the case of any state other than a foreign country or political subdivision thereof, the determination of whether such state has jurisdiction to subject the taxpayer to a net income tax will be determined under the Constitution and statutes of the United States. Such a state does not have jurisdiction to subject the taxpayer to a net income tax if it is prohibited from imposing such a tax by reason of the provisions of Public Law 86—272, 15 U.S.C. Sections 381-385. In the case of any foreign country or political subdivision thereof, the determination of whether such state has jurisdiction to subject the taxpayer to a net income tax will be determined as if the foreign country or political subdivision were a state of the United States or a political subdivision thereof." (86 Ill. Adm. Code § 100.3200(a)(2) (1992-93).)

Thus, according to this regulation, the Department requires that the taxpayer actually pay taxes in the destination State when that State has enacted a tax law to which the taxpayer is subject.

The Department interprets section 303(f)(2) as being applicable only when the destination State has not enacted a tax on income and the taxpayer's activities exceed solicitation of sales, thereby giving the State jurisdiction to tax if it so chooses. Illinois recognizes the prerogative of other States to have no income tax at all. Illinois' right to tax is derivative from the rights of the destination State. Where a destination State imposes no income tax, yet activities beyond solicitation are conducted in that State, Illinois' throwback rule would not apply since Illinois stands in no better shoes than the destination State. In light of the fact that South Dakota and Nevada had no income tax, but Dover's activities in those States exceeded the mere solicitation of sales, Dover was considered taxable in those States and the sales in those States were not thrown back to Illinois.

The Department contends that where, however, the destination State does tax income, and the taxpayers' activities in that destination State exceed mere solicitation, the taxpayer is subject to an income tax in that State. In order for a taxpayer to show that it is taxable in the destination State, thereby preventing the sales from being thrown back to Illinois, the taxpayer must prove that it in fact filed a tax return in that State and paid the tax.

Other jurisdictions have interpreted statutes with language virtually identical to our section 303(f)(2) and have held that a seller is taxable in the destination State if that State has jurisdiction to tax

the seller, regardless of whether the seller actually pays taxes in that State. In *Goldberg v. State Tax Comm'n* (Mo. 1981), 618 S.W.2d 635, the seller made sales to customers located in Puerto Rico. Although Puerto Rico imposes an income tax, the seller did not file an income tax return or pay income tax there. The Missouri Supreme Court held that, although the seller did not pay taxes in Puerto Rico, he was still taxable in Puerto Rico and, therefore, the sales made to customers in that State could not be thrown back to Missouri. See also *Indiana Department of State Revenue v. Continental Steel Corp.* (Ind. Ct. App. 1980), 399 N.E.2d 754 (when the taxpayer's activities in the destination State exceed solicitation, only that State has jurisdiction to tax).

Were we to rely simply on the plain language of section 303(f)(2), as the dissent does, we would be persuaded by Dover's argument that the destination State's jurisdiction to tax, even if the taxpayer has not paid the tax, renders the taxpayer taxable in the destination State. However, we cannot look at the language of section 303(f)(2) in isolation. Rather, we must read the statute in conjunction with the Illinois Supreme Court's decision in *GTE Automatic Electric, Inc. v. Allphin* (1977), 68 Ill. 2d 326, 369 N.E.2d 841.

■ It is the Department's interpretation of "taxable" that carries out the purpose of apportionment as expressed in the *GTE* case, which is to have 100% of the taxpayer's income taxable by the States having jurisdiction to do so. In *GTE* the court held that the legislative purpose in enacting its formula apportionment provisions was to assure that 100%, no more or no less, of the business income of a corporation doing multistate business is taxed by States having jurisdiction to tax it. *GTE* concerned "drop-shipment" sales, where the taxpayer's supplier shipped property from Illinois to the destination State, but the taxpayer was not taxable in the State of origin or of destination. The court found that the legislature had clearly demonstrated its intent to apportion income so that there is neither an overlap nor a gap in taxing income. In order to prevent "nowhere" sales, the court permitted the Department's inclusion of the drop-shipment sales in the Illinois sales numerator. See *New Yorker Magazine, Inc. v. Department of Revenue* (1989), 187 Ill. App. 3d 931, 543 N.E.2d 957 (the purpose of the apportionment formula is to assure not only that a corporation's business income is not overtaxed, but also to avoid any gap in taxing all business income).

While we agree with the dissent that there are factual differences between *GTE* and the instant case, the language in *GTE* is expansive and does not reveal the supreme court's intent to limit its holding to the facts of that case. In fact, the *amici curiae* in *GTE* urged the

court to adopt a narrow interpretation of the statute at issue in that case. The supreme court declined that invitation, emphasizing the legislative intent of assuring that 100% of business income is taxed. We find no language in *GTE* that could lead us reasonably to conclude that the policy enunciated therein is to be limited only to the specific facts presented in the *GTE* case.

Under Dover's interpretation of section 303(f)(2), a taxpayer would be taxable in the State of destination with jurisdiction to tax, regardless of whether the taxpayer ever paid taxes or filed returns in that other State. However, if Dover is found taxable for 1984 and 1985 in the destination States to which it did not assign sales, this would create "nowhere" sales, sales not allocated to any States for purposes of State income tax. Dover's sales would not be attributable to either Illinois or the destination States, thereby permitting Dover to have less than all of its business income taxed.

■ It is therefore our opinion that in order to carry out the intent of the Illinois legislature's tax policy of having 100% of business income taxed, expressed by our supreme court in *GTE*, the Department was authorized to promulgate regulation 100.3200(a)(2), requiring that if a taxpayer is subject to a tax in another State, the taxpayer must establish that he actually paid the tax in order to be considered taxable in that other State under section 303(f). While Dover admits that the destination States had jurisdiction to tax, the fact remains that Dover filed no tax returns in those States. Dover stipulated that it did not file tax returns or pay income taxes to any of the domestic States and foreign countries listed in categories 1 and 2. Dover was required to self-report and assign those sales to the numerator of the destination States where they were taxable or, when not taxable in the destination States, attribute those sales to Illinois. The tax system depends on self-reporting. Were we to accept Dover's interpretation of the statute, we would be encouraging companies not to file tax returns in the destination States and would be shifting the responsibility for apportionment from the taxpayer's duty to self-report to the Department's audit department.

■ Dover is concerned that if the sales are thrown back to Illinois, the destination States could at some point also seek to recover taxes from Dover for its 1984 and 1985 sales, thereby subjecting Dover to duplicative taxation in violation of the commerce clause of the Federal Constitution. A tax statute will withstand constitutional attack under the commerce clause if the tax is applied to business activity with a substantial nexus to the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State. (*Complete Auto*

*Transit, Inc. v. Brady* (1977), 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076.) In order for a tax to be fairly apportioned, the tax must be internally consistent. (*Goldberg v. Sweet* (1989), 488 U.S. 252, 102 L. Ed. 2d 607, 109 S. Ct. 582.) "To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result." *Goldberg*, 488 U.S. at 261, 102 L. Ed. 2d at 617, 109 S. Ct. at 589.

In *GTE*, the court rejected the seller's multiple taxation claim, stating that, "[i]t is only those out-of-State *** sales in which plaintiff is not taxable either in the State of origin or destination that are being assigned to Illinois, and this obviously cannot result in double taxation." (*GTE*, 68 Ill. 2d at 341, 369 N.E.2d at 849.) Although one commentator has found the *GTE* court's analysis faulty and that multiple taxation could in fact arise under the court's approach, that commentator admitted that the court's decision does not necessarily raise constitutional problems. (See Hellerstein, *Construing the Uniform Division of Income For Tax Purposes Act: Reflections on the Illinois Supreme Court's Reading of the "Throwback" Rule*, 45 U. Chi. L. Rev. 768 (1978).) Professor Hellerstein noted that the decision in *GTE* is constitutional if it is taken to mean either that: (1) sales not taxable elsewhere may be assigned to the sales factor numerator of the State in which the taxpayer has its principal place of business; or (2) that the taxpayer has the burden of proving its case and unless the taxpayer can demonstrate that it has in fact been subjected to multiple taxation, the problem is not one of constitutional magnitude. 45 U. Chi. L. Rev, at 794-95. See also *Moorman Manufacturing Co. v. Bair* (1978), 437 U.S. 267, 57 L. Ed. 2d 197, 98 S. Ct. 2340 (the risk of duplicative taxation must not be simply speculative).

The Dover Taxpayers have not in fact demonstrated that they have been subject to multiple taxation. The Dover Taxpayers have not paid taxes in any State on any of the income the Department is seeking to have thrown back to Illinois. Furthermore, we are concerned when double taxation is caused through no fault of the taxpayer. In the instant case, any risk of double taxation is caused not by the Department, but by Dover's own conduct in failing to file tax returns and pay taxes in the destination States. The Dover Taxpayers concede that the destination States have jurisdiction to tax. Dover therefore could have easily prevented the risk of double taxation by simply filing tax returns in the destination States. Thus, any risk of double taxation in the instant case is even more tenuous than that present in *GTE* since, here, the seller was in fact subject to the jurisdiction of the destination States and had Dover paid taxes in the destination States, Illinois would not be seeking the throwback sales.

■ For the first time on appeal, Dover asserts that certain foreign countries in category 2 actually withheld taxes on dividends, interest and royalties (and that there was a violation of the foreign commerce clause). Since these arguments were not raised below, we consider these issues waived for the purposes of appeal. We apply the rules expressed above to domestic States as well as foreign countries. Accordingly, we find that the circuit court properly determined that the income from Dover's sales in the destination States should be thrown back to Illinois.

Dover next maintains that if we find the Department's interpretation of "taxable" to be correct, then the sales to category 1 States should be excluded from the Illinois numerator because some members of the Dover Unitary Group paid taxes to those destination States. We must therefore determine whether the entire unitary group is a "taxpayer" and, therefore, if a tax payment in the destination State by any member of the group means that the entire group was taxable in the destination State.

■ We have reviewed the relevant statutes and regulations and do not believe that the term "taxpayer" is meant to refer to a unitary group. Section 303(f)(1) of the Tax Act provides that a taxpayer is taxable in another State if: "In that state *he* is subject to a net income tax." (Emphasis added.) (35 ILCS 5/303(f)(1) (West 1992).) Furthermore, pursuant to the Tax Act, a "taxpayer" is "any person subject to the tax imposed by this Act." (35 ILCS 5/1501(a)(24) (West 1992).) In addition, regulation section 100.3200(a)(2) provides that "[a] taxpayer is subject to one of the specified taxes in *** a particular state only if *he* is subject to such tax by reason of income-producing activities in such state." (Emphasis added.) (86 Ill. Adm. Code § 100.3200(a)(2) (1992-93).) There is nothing to indicate that a unitary group is a "taxpayer."

Furthermore, to apply Dover's interpretation of "taxable" and "taxpayer" would circumvent the intent of assuring that a State receive 100% of the business income apportionable to taxpayer activities. None of the sales thrown back to the sales factor numerator of the Illinois taxpayers were included in the sales factor numerator of the non-Illinois members of the Dover Unitary Group in the destination States where they filed a return or paid tax. Dover did not attribute the Bernard and Groen sales either to the destination States or to Illinois, the origination State. While certain members of the Dover Unitary Group paid taxes in the category 1 destination States, none of these members reflected Bernard's and Groen's sales activities in the sales numerators of the category 1 States. Thus, applying the three-factor apportionment formula, the sum of the sales numerator

in every State, for every group member, will be less than the unitary group's "everywhere" sales. Therefore, we are not persuaded by Dover's interpretation of the term "taxpayer," since such an interpretation would mean that the sales activities of Bernard and Groen in the destination States will remain unreported. Such an approach is contrary to apportionment's purpose of assuring that 100% of business income is subject to taxation.

Dover claims that the inclusion of its sales in category 1 States violated the uniformity clause (Ill. Const. 1970, art. IX, § 2), because the uniformity clause provides that a classification must be based on a real and substantial difference between the people taxed and not taxed and must bear some reasonable relationship to the object of the legislation or to public policy. (*Searle Pharmaceuticals, Inc. v. Department of Revenue* (1987), 117 Ill. 2d 454, 512 N.E.2d 1240.) Dover urges us to treat the unitary group as we would a corporation, which need only file one tax return. However, a corporation is clearly one taxpayer. The members of a unitary group, however, are not all Illinois taxpayers. In fact, 27 to 31 of the unitary members did not file tax returns in Illinois.

Dover next contends that the circuit court improperly characterized certain royalties received by Dover as "business income" apportioned to Illinois. The royalties at issue are (1) royalties received from licensees for the use of Dover's technology in foreign markets which Dover did not serve; and (2) royalty income received as a result of patent infringement recoveries.

Business income is defined as:

> "income arising from transactions and activity in the regular course of the taxpayer's trade or business ***, and includes income from *** intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." (35 ILCS 5/1501(a)(1)(West 1992).)

Nonbusiness income is defined as any income other than business income. 35 ILCS 5/1501(a)(13)(West 1992).

There are two alternative tests to be applied in determining whether an item of income is business income. (*National Realty & Investment Co. v. Department of Revenue* (1986), 144 Ill. App. 3d 541, 494 N.E.2d 924.) These two tests are referred to as the "transactional" and "functional" tests. If either test is met, the income constitutes business income. The transactional test, which is derived from the first clause of section 1501(a)(1), classifies income as business income if the income is derived from a type of business transaction in which the taxpayer regularly engages. (*National Realty*, 144 Ill. App. 3d at

554.) Under the functional test, which is derived from the second clause of section 1501(a)(1), the relevant inquiry is whether the property was used in the taxpayer's regular trade or business operations. *National Realty*, 144 Ill. App. 3d at 554.

Department regulation 100.3050(a) states in part:

> "[T]he critical element in determining whether income is 'business income' or 'nonbusiness income' is the identification of transactions and activity which are the elements of a particular trade or business. In general, all transactions and activity which are dependent upon or contribute to the operations of the economic enterprise as a whole will be transactions and activity arising in the regular course of a trade or business." (86 Ill. Adm. Code § 100.3050(a) (1985).)

A taxpayer's income is business income unless it is clearly classifiable as nonbusiness income; the taxpayer has the burden of demonstrating that a particular item of income is nonbusiness income. *National Realty*, 144 Ill. App. 3d at 553-54.

■ Applying these tests, we do not believe that Dover clearly demonstrated that these royalties were nonbusiness income. The Dover Unitary Group is in the business of engineering, manufacturing and selling proprietary-type products. In order to carry out its business, Dover Unitary Group must research and develop technologies and obtain patents for such technologies. The expense for such research and development is deducted from its unitary income.

Dover has licensed patents to licensees in 20 foreign markets which it has chosen not to serve. Rather than manufacture a product in that market, Dover licenses the technology to a local business. According to Dover, this arrangement allows Dover Unitary Group members the benefit of having the technology developed in an unserved market without exposure or presence in that market. Thus, Dover has failed to establish that the patents generating the income were not held or created in the regular course of business operations or that the purpose of developing and acquiring the patents was not integral to its business operations.

Also at issue is the royalty income received by Dover in the protection of its patents from infringement by other parties. Dover contends that "the receipt of a royalty pursuant to a patent infringement settlement regarding technology unrelated to the Dover Unitary Group's business is clearly not an integral part of Dover Unitary Group's business." We agree with the circuit court that royalty income does not become nonbusiness income merely because Dover enforced its right to receive such income through litigation. Because Dover never raised below the issue that treating these royalties as business income violated due process, we consider this issue waived.

Accordingly, for the reasons set forth above, the decision of the circuit court is affirmed.

Affirmed.

COUSINS, P.J., concurs.

JUSTICE T. O'BRIEN, dissenting in part:
I respectfully dissent from the majority opinion to the extent that it holds that a multistate corporation must establish that it actually "paid a tax" in another State in order to be considered "taxable" under the Illinois version of the "throwback rule."

Prior to 1957, the various States labored under diverse and often conflicting methods of dividing the total taxable income of a corporation engaged in multistate operations. In an effort to alleviate inconsistencies and prevent double taxation, the National Conference of Commissioners of Uniform State Laws recommended the adoption of the Uniform Division of Income for Tax Purposes Act (Uniform Act). The Uniform Act proposed uniform principles of allocation to ensure that 100% of a corporation's income, neither more nor less, was taxable by States having jurisdiction to levy taxes.

Illinois is among the majority of States adopting the Uniform Act's approach to income apportionment. Section 304 of the Illinois Income Tax Act (Act) sets forth the statutory methodology for allocating the income of a multistate business subject to this State's income tax. (Ill. Rev. Stat. 1983, ch. 120, par. 3—304 (now, as amended, 35 ILCS 5/304(a) (West 1992)).) The allocation is expressed in terms of a percentage of three factors which are intended to represent the fractional share of a corporation's in-State business activity.

Specifically, the Act provides that a multistate corporation's taxable income "shall be apportioned to this State by multiplying the income by a fraction, the numerator of which is the sum of the property factor (if any), the payroll factor (if any) and the sales factor (if any), and the denominator of which is 3 reduced by the number of factors which have a denominator of zero." (Ill. Rev. Stat. 1983, ch. 120, par. 3—304(a) (now, as amended, 35 ILCS 5/304(a) (West 1992)).) This apportionment is best expressed by the following formula:

$$\frac{\text{Illinois Property}}{\text{Property Everywhere}} + \frac{\text{Illinois Payroll}}{\text{Payroll Everywhere}} + \frac{\text{ILLINOIS SALES}}{\text{Sales Everywhere}}$$
$$3$$

The Act explains further that the ILLINOIS SALES numerator is determined by the total sales of tangible personal property in this State. A sale of tangible personal property occurs in this State if "(i)

[t]he property is delivered or shipped to a purchaser *** within this State regardless of the f.o.b. point or other conditions of the sale; or (ii) [t]he property is shipped from an office, store, warehouse, factory or other place of storage in this State and *** the person is not *taxable* in the state of the purchaser." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 120, par. 304(a)(3)(B).) It is the sales occurring under subsection (ii), *i.e.*, property shipped from this State to a purchaser in a State where the corporation is not taxable, which are "thrown back" to Illinois to be added into the ILLINOIS SALES numerator for the purpose of determining the net income tax.

The dispositive issue in this case is the meaning of the term "taxable" as used in section 304 (a)(3)(B)(ii). Contrary to the position of the Illinois Department of Revenue, plaintiff taxpayers contend the actual payment of taxes in a destination State is irrelevant in determining whether a corporation is "taxable" in that State. I agree.

The Illinois Income Tax Act itself defines "taxable" as follows:

"(f) Taxability in other state. For purposes of allocation of income pursuant to this Section, a taxpayer is taxable in another state if:

(1) In that state he is subject to a net income tax, a franchise tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax; or

(2) That state has jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, that state does or does not." (35 ILCS 5/303(f) (West 1992).)

Thus, in order for a taxpayer to be considered "taxable" in another State, the taxpayer must show that (a) the other State has in fact levied one of the taxes listed in subsection (1) against him *or* (b) the other State has *jurisdiction* under subsection (2) to levy all net income tax against him regardless of whether the other State does or does not levy such a tax.

The critical inquiry under subsection (2) is not whether the taxpayer has in fact paid a net income tax in another State; indeed, the existence of such a tax is irrelevant to a finding of taxability. Rather, the determinative question is whether the other State has "jurisdiction" to subject the taxpayer to a net income tax.

Jurisdiction in this context is governed primarily by Public Law No. 86—272. (Pub. L. No. 86—272 § 101, 73 Stat. 555, 15 U.S.C. § 381 *et seq.* (1988).) This Federal statute prohibits a State from imposing a net income tax on foreign corporations deriving income from interstate commerce in the State where the only corporate activities in that State amount to the mere solicitation of orders for sales of tangible personal property.

In the instant case, the Illinois Department of Revenue concedes that the taxpayers' activities exceeded the mere solicitation requirement of Public Law No. 86—272 in all of the destination States. Consequently, those States had jurisdiction to subject the taxpayers to a net income tax, and the taxpayers are therefore deemed to be "taxable" in those States. It necessarily follows that the sales of tangible personal property in the destination States cannot be "thrown back" to Illinois and should not have been included in the ILLINOIS SALES numerator.

The overwhelming majority of other jurisdictions which have considered the determination of taxability under the same or substantially the same taxing provisions, I believe, have reached the same conclusion advanced in this dissent; namely, a corporation is "taxable" in the destination State if that State possesses jurisdiction to subject the corporation to a net income tax regardless of whether the corporation actually pays the tax. The bases underlying these decisions are not only the plain and unambiguous language of the tax provisions, but also the fact that a determination of taxability predicated upon proof of payment of taxes could lead to an impermissible double taxation. For example, the taxpayers in the instant case may still be required to pay a net income tax in certain of the destination States despite the fact that Illinois has already exacted the same tax.

The Illinois Department of Revenue's reliance on *GTE Automatic Electric, Inc. v. Allphin* (1977), 68 Ill. 2d 326, 369 N.E.2d 841, is, I believe, misplaced.[1] In *GTE*, the issue before the court was the proper allocation of drop shipment or "nowhere sales," *i.e.,* the shipment of tangible personal property from an inventory in a State where the corporation was not taxable to a purchaser in another State where the corporation was again not taxable. Clearly, under "nowhere sales" the corporation could never suffer the risk of double taxation since both the State of origin and the destination State lacked even the jurisdiction to tax the corporation.

I further believe that *GTE* court did not consider, indeed it was not necessary to pass upon, the category of "throw back sales" at issue in this case. *GTE*, therefore, offers nominal precedence.

Therefore, I respectfully dissent in part.

---

[1]The Department's reliance on 86 Ill. Adm. Code § 100.3200 (1992-93), which requires the payment of taxes as a prerequisite to taxability, is also misplaced since a regulation cannot alter the clear terms of the statute which it purports to interpret.