**GREAT NORTHERN NEKOOSA CORP., et al.**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued Nov. 2, 1995.
Decided April 29, 1996.

James G. Good (orally), Sarah H. Beard, Jonathan A. Block, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for Plaintiffs.

Andrew Ketterer, Attorney General, Clifford B. Olson (orally), Assistant Attorney General, Augusta, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

This is a report pursuant to M.R.Civ.P. 72(c) of an interlocutory judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) holding that the State Tax Assessor ("the Assessor") erred in including certain sales of Great Northern Nekoosa Corporation ("GNN") in the computation of its 1987–1990 Maine income tax. At issue is the construction of the "throwback rule" 36 M.R.S.A. § 5211(15)(B) (1990), which applies when a corporation sells products from Maine in a state that does not have sufficient contact to subject the corporation to taxation in that state. The throwback rule is designed to eliminate "nowhere" sales and assign them to the originating state, thereby reducing the possibility of income escaping taxation. We agree with the Assessor's interpretation of the statute and vacate the judgment of the Superior Court.

GNN was engaged in business in Maine and elsewhere as one of more than ten affiliated corporations comprising a unitary business group. The federal taxable income, property, payroll, and sales of the members of GNN's unitary group were included on a combined report required by 36 M.R.S.A. §§ 5220(5) and 5244 (1990). Of the members of that unitary group, however, only GNN and Great Northern Properties, Inc. ("GNP") were taxpayers and filed tax returns in Maine. In addition to sales that are unquestionably attributed to Maine, GNN sold goods produced in Maine in a number of states in which GNN was not taxable individually, but in which an affiliated member of GNN's unitary business was taxable. The Assessor concluded that those sales should be "thrown back" to Maine and included in the apportionment formula as Maine sales. After the Assessor issued and affirmed his assessment for the audit years 1987 through 1990, GNN and GNP brought this action challenging the assessment in the Superior Court. The court granted a judgment in GNN's favor, holding that a sale made by GNN in a state in which an affiliate is subject to taxation is not "thrown back" to Maine by section 5211(15)(B).

Maine assesses corporate income tax pursuant to the Uniform Division of Income for Tax Purposes Act (UDITPA), 36 M.R.S.A. §§ 5210–5211 (1990 & Supp.1994).[1] The uniform law is designed to permit states to fairly apportion the income of a multistate corporation in accordance with the distribution of a corporation's property, payroll, and sales. This apportionment formula results in a percentage of multistate corporate income assignable to Maine. Because each state is free to tax and apportion income subject only to constitutional limits, UDITPA involves no consideration of the aggregate taxes imposed by the various states. Nonetheless in theory if every state adopted UDITPA and applied its apportionment scheme, gaps and overlaps would be eliminated and a multistate corporation would, in the aggregate, pay taxes on no more and no less than 100 percent of its income.

When a multistate corporation has sales in one state but has no property or payroll there, a difficulty arises with the use of formula apportionment to determine taxable income. Federal law prevents a state from

---

**1.** The Due Process Clause of the Fourteenth Amendment imposes two requirements on states to tax income generated in interstate commerce. *First* there must be a minimal connection or nexus between the interstate activities and the taxing state, and second there must be a rational relationship between the income attributed to the state and the intrastate values of the enterprise. *Mobil Oil Corp. v. Commissioner of Taxes of Vt.,* 445 U.S. 425, 436–37, 100 S.Ct. 1223, 1231–32, 63 L.Ed.2d 510 (1980).

taxing a corporation that has no contact with the state other than the solicitation of sales.[2] Pursuant to a provision commonly known as the "throwback rule" UDITPA reassigns those sales that occur in states in which "the taxpayer is not taxable" to the originating state. 36 M.R.S.A. § 5211(15)(B). A taxpayer is considered taxable in another state if that state has jurisdiction to subject the taxpayer to an income tax regardless of whether the state imposes such a tax. 36 M.R.S.A. § 5211(2). As originally enacted in Maine in 1964, UDITPA dealt only with single corporate taxpayers engaged in multi-state business.

In 1986 Maine adopted a requirement that affiliated corporations engaged in a unitary business[3] file a combined report listing in aggregate and by corporation federal taxable income, property, payroll, and sales. 36 M.R.S.A. §§ 5220(5), 5244.[4] The aggregate income on the combined report is apportioned in accordance with UDITPA and the corporate taxpayer includes the Maine share of income on its Maine tax return. *Tambrands v. State Tax Assessor*, 595 A.2d 1039, 1044 (Me.1991). Thus UDITPA, without amendment, became applicable to a taxpayer and its affiliates and therein lies the cause of the current controversy.

During the audit years in question Maine's share of GNN's income was determined by the following calculation:

[B]y multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is 3.

36 M.R.S.A. § 5211(8).[5]

The sales factor is defined as follows:

The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this State during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

36 M.R.S.A. § 5211(14)

The property and payroll factors in section 5211(8) are similarly defined.[6] The apportionment factor is then multiplied by the federal taxable income of the entire unitary business to yield the income taxable by Maine.

In determining the sales factor numerator, UDITPA's "throwback rule" provides that a taxpayer's sales are attributed to Maine if "[t]he property is shipped from an office, store, warehouse, factory or other place of storage in this State and ... *the taxpayer* is not taxable in the state of the purchaser."

2. 15 U.S.C. § 381(a) provides, in pertinent part:
No State ... shall have power to impose, for any taxable year ... a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:
(1) the solicitation of orders by such person or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and
(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

3. A unitary business is defined as "a business activity which is characterized by unity of owner-

ship, functional integration, centralization of management and economies of scale." 36 M.R.S.A. § 5102(10–A).

4. 36 M.R.S.A. § 5244 provides:
The combined report required by section 5220, subsection 5, shall include, both in the aggregate and by corporation, a list of the federal taxable income, the modifications provided by section 5200–A, the property, payroll and sales in Maine and everywhere as defined in chapter 821 and the Maine net income of the unitary business. Neither the income nor the property, payroll and sales of a corporation which is not required to file a federal income tax return or of an 80–20 corporation may be included in the combined report.

5. This provision has been amended by P.L.1991, c. 502, § 1, which requires that the sales factor be double-weighted in determining the apportionment formula.

6. The UDITPA apportionment formula is thus calculated in the following way:

$$\frac{\text{Maine property}}{\text{property everywhere}} + \frac{\text{Maine Sales}}{\text{sales everywhere}} + \frac{\text{Maine Payroll}}{\text{payroll everywhere}} = \text{apportionment factor}$$

36 M.R.S.A. § 5211(15)(B) (emphasis added). GNN argues and the Superior Court ruled that "taxpayer" as used in the "throwback rule" must, after the adoption of combined reporting, refer to GNN or any of its affiliates. Thus certain sales could not be thrown back to Maine because affiliates in GNN's unitary business are taxable in the destination states. Accordingly the court ordered the Assessor to deduct those sales from the Maine sales of GNN for purposes of apportioning federal taxable income. We conclude that the court erroneously rejected the Assessor's interpretation of section 5211(15)(B).

This case involves only the construction of the throwback rule and neither party argues that the interpretation it offers is constitutionally compelled. The court concluded that UDITPA was amended implicitly when combined reporting was adopted. The court reasoned that if, as both parties agree, "taxpayer" includes corporate affiliates in defining the denominator of the sales factor pursuant to section 5211(14), then the same word as used in the throwback rule must also include affiliates. Although such parallel construction is logical, it rests on a faulty premise and finds no support in the statute, explicit or implicit.

The sales of the affiliates are included in the denominator not because the affiliates are a "taxpayer," (in fact they are not) but rather because their inclusion is constitutionally compelled. If the aggregate federal taxable income of the unitary business was apportioned without reference to the sales, property, and payroll of the affiliates, Maine would inevitably and unconstitutionally tax the entire income of the multistate unitary business. The application of the "throwback rule," however, raises no constitutional issue. Thus we must construe the words of the statute.

Other jurisdictions have considered the relationship between the "throwback rule" and combined reporting. The authority is divided. Those tribunals adopting the Assessor's position have premised their rulings on legislative intent in adopting UDITPA to apportion income so that there is neither an overlap nor a gap in taxation. *Dover Corp. v. Department of Revenue*, 271 Ill.App.3d 700, 208 Ill.Dec. 167, 648 N.E.2d 1089 (1995) and *GTE Automatic Electric, Inc. v. Allphin*, 68 Ill.2d 326, 12 Ill.Dec. 134, 369 N.E.2d 841 (1977). Those tribunals adopting GNN's position have focused on the consistency of that result with a unitary theory of corporate income taxation. *Airborne Navigation Corp. v. Department of Revenue*, 1987 WL 50031, No. 395-85-I (Ariz.Bd.Tax.App. Feb. 5, 1987) and *Appeal of Finnigan*, 1988 WL 52336, 88-SBE-022 (Cal.St.Bd.Eq. Aug., 25, 1988) (affirmed on rehearing in *Appeal of Finnigan*, 1990 WL 15164, 88-SBE-022A (Cal.St.Bd. Eq. Jan. 24, 1990)).

We conclude that the "throwback rule" as written achieves a fair result. GNN has not persuaded us that consistency with a unitary theory of corporate taxation compels a different result. GNN correctly theorizes that sales removed from the Maine numerator could be included in the income of the affiliates taxable in the destination states. Likewise, Maine sales of the affiliates could be included in GNN's sales numerator. There is no evidence, however, that the former event has in fact occurred.[7] The court's decision deviates from the language of the "throwback rule" and significantly reduces GNN's tax burden in Maine in the absence of any demonstration that the income has been taxed or is subject to tax in another state.[8] The Assessor's construction of the "throwback rule" is not only defensible in theory and fair in reality, but also, and more important, it is required by the language of the statute. Sales by a Maine taxpayer in a destination state where the taxpayer is not taxable are thrown back to Maine by section 5211(15)(B) even though an affiliate of the taxpayer is taxable in that state.

The entry is:

---

7. Consistent with its position, GNN has amended its tax returns to include the Maine sales of its affiliates in its numerator. The Assessor rejected the amendment.

8. UDITPA authorizes the Assessor to deviate from the apportionment formula if it fails to fairly represent the extent of the taxpayer's business activity in Maine. See 36 M.R.S.A. § 5211(17) (1990).

Judgment vacated. Remanded to the Superior Court with instructions to enter an order affirming the decision of the State Tax Assessor.

ROBERTS, GLASSMAN, RUDMAN, DANA, and LIPEZ, JJ., concurring.

CLIFFORD, Justice, dissenting.

Because, in my view, the Assessor's construction giving different meanings to the words "the taxpayer" within the apportionment statute is contrary to the plain language of the statute and is inconsistent with the unitary business concept pursuant to which Maine's income tax scheme operates, I respectfully dissent.

The Uniform Division of Income for Tax Purposes Act, 36 M.R.S.A. §§ 5210–5211 (1990 & Supp.1995), operates to apportion the income of businesses that generate income within Maine and other states so that the income taxed by Maine is attributable to Maine activity. *Id.* § 5211; *see Tambrands, Inc. v. State Tax Assessor,* 595 A.2d 1039, 1040–41 (Me.1991). GNN is a unitary business, *see* 36 M.R.S.A. § 5102(10–A) (1990), comprised of ten affiliated corporations, and is required to file income tax returns as a unitary business and report the combined income of its affiliates.

36 M.R.S.A. § 5244 (1990) requires the reporting of all property, payroll, and sales of the entire unitary business so that those factors may be used in the formula to apportion to this state the income of the unitary business that is attributable to Maine activity.[9] Section 5211 provides for the apportionment of the property, payroll, and sales factors of "the taxpayer." The Superior Court correctly concluded that the term "the taxpayer," whenever it is used throughout section 5211, means the entire unitary business group.[10]

The Assessor does not dispute that, within section 5211, "the taxpayer" is treated as the entire unitary group for purposes of the *denominator* of the property, payroll, and sales factor formula. According to the Assessor's construction of the statute that this Court adopts, however, "the taxpayer," as defined in sections 5211(14) and (15)(B)[11] (dealing with the sales factor *numerator* in the apportionment formula) has a different meaning; for those purposes, the meaning of "the taxpayer" is limited to only those corporations in the unitary business that have a Maine nexus.[12]

In my view, assigning different meanings to "the taxpayer" within the same section of a statute does not comport with common sense or with the rules of statutory construc-

9. 36 M.R.S.A. § 5244 (1990) provides in pertinent part:

> The combined report ... shall include, both in the aggregate and by corporation, a list of the federal taxable income, ... the property, payroll and sales in Maine and everywhere as defined in Chapter 821 and the Maine net income of the unitary business....

10. Pursuant to 36 M.R.S.A. § 5211(14) (1990), sales of "the taxpayer" means sales of the entire unitary business group. Accordingly, pursuant to section 5211(15)(B), if property is shipped from this state by a member of the unitary group to another state, and any of the members of the unitary business are taxable in the distribution state (the state of the purchaser), then those sales are not considered sales of tangible personal property "in this State" within the meaning of section 5211(14), and are not subject to the "throw back" rule. Those sales are not Maine sales, and therefore are not included in the numerator of the sales factor in the apportionment formula.

11. 36 M.R.S.A. § 5211(14) provides:

> **Sales factor formula.** The sales factor is a fraction, the numerator of which is the total sales of the taxpayer *in this State* during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

(Emphasis added.)
36 M.R.S.A. § 5211(15)(B) provides:

> **When sales of tangible personal property are in this State.** Sales of tangible personal property are in this State if:
>
> ....
>
> B. The property is shipped from an office, store, warehouse, factory or other place of storage in this State and the purchaser is the United States Government *or the taxpayer is not taxable in the state of the purchaser.*

(Emphasis added.)

12. Accordingly, pursuant to that construction, sales shipped from Maine to any destination state where the Maine nexus members of the unitary group are not taxable (even though another member of the unitary group may be taxable in that state) is considered a sale in "this State" and, pursuant to section 5211(15)(B), is "thrown back" for inclusion in the sales factor numerator pursuant to section 5211(14). This increases substantially the income of the plaintiff taxable in Maine because it counts as sales in this state sales that actually occur in other states.

tion. Identical words in different *parts* of the same statute are presumed to have the same meaning. *Sullivan v. Stroop,* 496 U.S. 478, 484, 110 S.Ct. 2499, 2503, 110 L.Ed.2d 438 (1990). So much more so for identical words in the same *section.* Had the Legislature intended the same words to have different meanings within the same statutory provision, it could have stated that intention. Moreover, a statute must be read in its entirety, so that a harmonious result intended by the Legislature can be reached. *Delano v. City of S. Portland,* 405 A.2d 222, 227 (Me.1979); *In re Belgrade Shores, Inc.,* 359 A.2d 59, 61 (Me.1976). Had the Legislature intended the same words to have different meanings within the same statutory provision, it could have stated that intention.

The Assessor's construction impermissibly is skewed to increase the amount of taxes realized at the expense of comporting with the unitary business concept. Pursuant to that concept, Maine taxes income of corporations that do business across state lines by apportioning the income of the entire unitary business to determine what part of the income is attributable to Maine. The Assessor's construction attributes to Maine business activity that is not truly related to this state, i.e., sales in other states. The Superior Court correctly analyzed the issue:

> Under the unitary business concept, the income of a functionally integrated business enterprise is aggregated and then apportioned to reflect the amount of income of the entire unitary business that is attributable to Maine. The income is apportioned among Maine and other states in which the unitary business operates based on the relative level of property, payroll and sales of the unitary business in those states. Property, payroll and sales are thought to be reliable indicators of the level of business activity of the unitary business.
>
> The Assessor's interpretation of the apportionment provisions follows the unitary business principle in all respects except when applying the throwback rule.
>
> In so doing, the Assessor undermines the function of Maine's combined reporting/formula apportionment method of taxation by reducing the accuracy and reliability of the sales factor as a measure of the business activity of a unitary business. Sales by the unitary business that actually

occurred in other states are counted as Maine sales.

(Citations omitted.)

Even though the language of section 5211 was enacted when UDITPA dealt only with a single taxpayer, on the subsequent enactment of section 5244 and the adoption of the unitary combined reporting, UDITPA became applicable to all members of the unitary business group, and the language of section 5244 implicitly was amended so that "the taxpayer" would mean the entire unitary business group throughout section 5211. *See* 1 J. Hellerstein & W. Hellerstein, STATE TAXATION ¶ 9.21[1][a] (1993).

I would affirm the Superior Court judgment.