TEXACO-CITIES SERVICE PIPELINE COMPANY, Plaintiff-Appellee and Cross-Appellant, v. SAM McGAW, Acting Director of The Department of Revenue, Defendant-Appellant and Cross-Appellee.

First District (6th Division)   No. 1—95—1022

Opinion filed January 17, 1997.—Rehearing denied February 20, 1997.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of counsel), for appellant.

Fred O. Marcus, James H. Ryan, and Jordon M. Goodman, all of Horwood, Marcus & Braun, Chartered, of Chicago, and David J. Dziak, of Texaco Inc., of Houston, Texas, for appellee.

JUSTICE THEIS delivered the opinion of the court:

The trial court ruled that proceeds from a taxpayer's sale of pipeline constituted business income to be apportioned under the Illinois Income Tax Act's general three-factor formula. 35 ILCS 5/304(a) (West 1994). On appeal, the taxpayer challenges the trial court's classification of the proceeds as business income, and the defendant challenges the trial court's apportionment determination. We affirm in part and reverse in part.

Texaco, a nonresident corporation, owned and operated pipeline that ran through various states, including Illinois. Texaco transported crude oil and other petroleum products through this pipeline, which serviced various oil refineries. During the 1983 tax year, Texaco sold major segments of pipeline, including the pipeline that serviced refineries in Lockport and East Chicago, Illinois. The sale accounted for nearly 90% of Texaco's total pipeline holdings.

On its 1983 tax return, Texaco reported the sale of the pipeline and associated real estate as nonbusiness income. Texaco apportioned the remainder of its business income under the one-factor apportion-

ment formula found in section 304(d)(2) of the Illinois Income Tax Act. 35 ILCS 5/304(d)(2) (West 1994).

Upon audit, the Department of Revenue determined that the proceeds from the sale constituted business income. The Department issued a timely notice of deficiency. On March 8, 1990, Texaco filed a protest to the notice. The parties submitted the dispute to an administrative law judge (ALJ) to determine: (1) whether the income was business income; and (2) whether the general three-factor formula or the special one-factor formula should apply for apportioning business income. The ALJ concluded that the income was business income subject to apportionment under the special one-factor formula applicable to the transportation industry.

Texaco sought administrative review, arguing that, under the plain language of the Illinois Income Tax Act (the Act) (35 ILCS 5/304(d)(2) (West 1994)), the proceeds constituted nonbusiness income. In the alternative, Texaco claimed that the general three-factor formula for apportioning business income should apply to the proceeds. The trial court entered judgment in accordance with the ALJ's determination that the proceeds constituted business income. However, the trial court rejected the ALJ's ruling that the special one-factor formula for apportioning business income should apply. The trial court reasoned that the one-factor formula applied only to business income derived from actual pipeline transportation activity. The trial court further found that the application of the one-factor formula would be unconstitutional. The Department appealed and Texaco cross-appealed the adverse determinations.

We will review these disputed legal issues under a *de novo* standard. *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 116 Ill. App. 3d 1043, 452 N.E.2d 804 (1983). Because a finding that the proceeds constitute nonbusiness income would render the issues raised in the Department's appeal moot, we will address Texaco's cross-appeal first.

■ Section 1501(a)(1) of the Illinois Income Tax Act defines business income:

> "(1) Business Income. The term 'business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business, net of the deductions allocable thereto, *and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.* Such term does not include compensation or the deductions allocable thereto." (Emphasis added.) 35 ILCS 5/1501(a)(1) (West 1994).

Nonbusiness income is all income not classified as business income. 35 ILCS 5/1501(a)(13) (West 1994). The taxpayer bears the heavy burden of demonstrating that income is not business income. *Dover Corp. v. Department of Revenue*, 271 Ill. App. 3d 700, 712, 648 N.E.2d 1089, 1097 (1995).

Texaco argues that a plain reading of the Act demonstrates that only income arising from transactions within the regular course of its business constitutes business income. Because Texaco is in the business of transporting by pipeline, not selling the actual pipeline itself, Texaco claims that the income from this extraordinary transaction does not constitute business income.

■ We disagree. In *Dover Corp. v. Department of Revenue*, this court found:

> "There are two alternative tests to be applied in determining whether an item of income is business income. (*National Realty & Investment Co. v. Department of Revenue* (1986), 144 Ill. App. 3d 541, 494 N.E.2d 924.) These two tests are referred to as the 'transactional' and 'functional' tests. \*\*\* Under the functional test, which is derived from the second clause of section 1501(a)(1), the relevant inquiry is whether the property was used in the taxpayer's regular trade or business operations. *National Realty*, 144 Ill. App. 3d at 554." 271 Ill. App. 3d at 711-12, 648 N.E.2d at 1097.

In *Kroger Co. v. Department of Revenue*, 284 Ill. App. 3d 473 (1996), *modified upon denial of rehearing*, this court rejected arguments similar to those raised by Texaco. Finding the *Kroger* analysis to be both thorough and persuasive, we affirm the trial court's determination that Illinois law embraces two alternate tests for classifying business income.

■ Having determined that the functional test is an appropriate method for determining business income, we review the trial court's application. Texaco does not dispute that the pipeline was property used in its business. Texaco attempts to place the proceeds outside of the scope of this definition by arguing that the sale of 90% of its pipeline was an extraordinary transaction, which effectively terminated Texaco's pipeline presence in Illinois.

Initially, we find, as the trial court did, that Texaco failed to introduce any evidence that the sale of pipeline did not contribute to Texaco's continuing business operations as a whole. The absence of this evidence negates Texaco's contention that the sale of pipeline was a business-ending proposition. Furthermore, a review of the examples from the Department's regulations indicates that such a consideration is irrelevant. 86 Ill. Adm. Code § 100.3050(d)(3) (1991).

For example, where a corporation closes its plant, but does not sell its plant until 18 months after ceasing operations, the gain is business income. 86 Ill. Adm. Code § 100.3050(d)(3), example C, at 1577 (1991). While not binding authority, the Department's interpretation of law which it administers represents an informed source for ascertaining legislative intent. *Dover Corp. v. Department of Revenue*, 271 Ill. App. 3d 700, 648 N.E.2d 1089 (1995). We find Texaco's argument raises a distinction without a difference and affirm the trial court's application of the functional test.

■ We now turn to the issues raised in the Department's appeal. The Department disputes the trial court's interpretation of those sections of the Act that provide for the apportionment of business income. Business income is apportioned among the various states in which a company does business. As a general rule, the Act apportions business income under a three-factor formula. 35 ILCS 5/304(a) (West 1994). The Illinois legislature created exceptions to the general three-factor formula by enacting sections 304(b), (c), and (d) of the Act, which apportioned certain business income under a special one-factor formula. Specifically, section 304 provides special apportionment for:

> "(b) Insurance companies. (1) In general. Except as otherwise provided in paragraph (2), business income of an insurance company for a taxable year shall be apportioned to this State by multiplying such income by a [one-factor] fraction ***.
> ***
> (c) Financial organizations. (1) In general. Business income of a financial organization shall be apportioned to this State by multiplying such income by a [one-factor] fraction ***.
> * * *
> (d) Transportation services. Business *income derived from furnishing transportation services* shall be apportioned to this State in accordance with paragraphs (1) and (2).
> * * *
> (2) Such business income *derived from transportation by pipeline* shall be apportioned to this State by multiplying such income by a fraction, the numerator of which is the revenue miles of the person in this State, and the denominator of which is the revenue miles of the person everywhere." (Emphasis added.) 35 ILCS 5/304(b), (c), (d)(2) (West 1994).

In construing section 304, the trial court found "[t]he key distinction in Section 304(d) is that it focuses on the activity of furnishing transportation services, and not on all business income of transportation companies. In Section 304(d) only the income derived from furnishing transportation services is apportionable by a special

single-factor formula. All other business income of a transportation company is apportioned by the standard, equally-weighted three-factor formula pursuant to Section 304(a)'s general rule." The court stated that if the legislature had intended for the one-factor formula to apply to all of a transportation services company's business income, section 304(d) would have mirrored the language found in sections 304(b) and (c).

In reviewing the statute, we cannot agree with the trial court's conclusion that the plain language of section 304(d) clearly provides for an activity analysis, as opposed to the entity approach taken in sections 304(b) and (c). Rather, we find that the language of section 304(d) is ambiguous. Under traditional rules of statutory construction, we therefore turn to the legislative history, the Department's regulations, and a review of the Act's structure to determine the drafters' intentions.

" 'In ascertaining the legislative intent, it is proper to consider the circumstances leading up to the adoption as well as the language used in the act.' " See *Citizens Utilities Co. v. Department of Revenue*, 111 Ill. 2d 32, 41, 488 N.E.2d 984, 987 (1986), quoting *Follet's Book & Supply Store, Inc. v. Isaacs*, 27 Ill. 2d 600, 604, 190 N.E.2d 324, 326 (1963). Consistent with the majority of states, Illinois adopted the approach of the Uniform Division of Income for Tax Purposes Act (UDITPA) to apportioning business income. *Dover Corp. v. Department of Revenue*, 271 Ill. App. 3d 700, 648 N.E.2d 1089 (1995). The author of the UDITPA noted that the three-factor formula was designed specifically for the manufacturing and mercantile industries. Pierce, *The Uniform Division of Income for State Tax Purposes*, 35 Taxes 747 (1957). However, "[i]t was not regarded by its creators as suitable to other types of business. Different methods of apportionment *** are applied *** to electric and gas utilities, transportation and communication businesses *** and insurance companies ***." 1 J. Hellerstein & W. Hellerstein, Hellerstein and Hellerstein, State Taxation, par. 10.01, at 10—2 (2d ed. 1993).

Accordingly, the official commentary to Illinois' adoption of the Uniform Division of Income for Tax Purposes Act stated that special apportionment rules were being enacted for insurance companies, financial organizations and "persons furnishing transportation services." 1 Ill. Tax Rep. (CCH), par. 14—006, at 1903 (1987). Similarly, the Department's regulations provide that the special apportionment formula applies to "persons furnishing transportation services." 86 Ill. Adm. Code § 100.3500, at 1596 (1991). The history of the statute's enactment and the Department's interpretation of the statute reveal that the statute's goal was to provide special apportionment rules for certain industries.

There is no dispute that subsections (b) and (c) of section 304 are consistent with this goal, dictating an entity approach to apportionment. The trial court's willingness to depart from this established scheme based upon ambiguous statutory language is inappropriate. "Since a statute is passed as a whole, and animated by one general purpose, each part should be construed with every other part so as to produce a harmonious whole." *American National Bank & Trust Co. v. National Advertising Co.*, 149 Ill. 2d 14, 23, 594 N.E.2d 313, 317 (1992). We are persuaded that the legislature's purpose in enacting section 304 was to create a special apportionment formula for specific industries. We find that the legislature's focus was upon the taxpayer, not the income-producing activity. Therefore, we reject the trial court's binary entity and activity interpretation of section 304. We reverse the trial court's ruling and find that the proceeds should be apportioned under the one-factor formula.

■ Finally, we turn to Texaco's argument that application of the one-factor formula violates due process, because the resultant tax "would not be rationally related to the values generated from activities within the State." Texaco failed to present this argument before the ALJ, raising it for the first time in the trial court. In an administrative review action, arguments not presented to the administrative agency are waived. *A.R. Barnes & Co. v. Department of Revenue*, 173 Ill. App. 3d 826, 527 N.E.2d 1048 (1988). Therefore, we find Texaco's failure to present this issue to the ALJ results in waiver. See 735 ILCS 5/3—110 (West 1994).

Affirmed in part and reversed in part.

CAHILL and O'BRIEN, JJ., concur.