STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-07-24
ᴊᴍ⸍-ᴋᴇɴ- ｜2/4/꞉ꞏ꞉ɔꞏ꞉

NELNET, INC., et al.,

      Petitioners

      v.

STATE TAX ASSESSOR

      Respondent

DECISION AND ORDER

Before the court are cross-motions for summary judgment[1] on petitioners' M.R. Civ. P. 80C petition for judicial review challenging an assessment of corporate income tax by the State Tax Assessor (Assessor). For the following reasons, the petitioners' motion is granted.

## FACTS

I. *Petitioners' Business Structure*

Nelnet, Inc. is a Nebraska corporation. (PSMF ¶ 1; RRSMF ¶ 1.) During 2002, 2003 and 2004 (the "Contested Tax Years"), Nelnet and its subsidiaries (together, "petitioners") operated as a unitary business doing business in almost all 50 states, including Maine. (PSMF ¶ 2; RRSMF ¶ 2.) Generally, petitioners business was originating, acquiring, holding, servicing and guaranteeing student loans. (PSMF ¶ 3; RRSMF ¶ 3.)

---

[1] Petitioners filed their motion on April 22, 2008. The State Tax Assessor (the Assessor) filed his motion on April 23, 2008. Additionally, the Assessor filed a Motion to Exclude expert testimony on April 23, 2008.

During the Contested Tax Years, petitioners' unitary business consisted of approximately 25-35 entities.[2] (PSMF ¶ 4; RRSMF ¶ 4.) Some of the entities were known as "special purpose corporations" (SPCs), formed to protect their assets from bankruptcy and hold beneficial interests in trust indentures used to fund student loans. (PSMF ¶ 5-6; RRSMF ¶ 5-6.) The SPCs were separate legal entities, had their own tax identification numbers, held beneficial interests in the student loans, had no employees, and were incorporated primarily in Nevada, Nebraska or Delaware. (PSMF ¶¶ 7-10; RRSMF ¶¶ 7-10.)

II. *The Loan Process*

As part of its Maine loan business, Nelnet established itself as a preferred lender, which Maine residents attending schools inside and outside of Maine could select. (PSMF ¶¶ 31-46; RRSMF ¶¶ 31-46.) Following the submission of a federal financial aid application, the U.S. Department of Education provided financial eligibility information to a student's school. (RRSMF ¶ 36.) Pursuant to this eligibility information, schools attended by Maine borrowers sent award letters to students. (PSMF ¶ 37, RRSMF ¶ 37.) After receiving an award letter, the student completed the standard promissory note and selected a lender. If a student selected Nelnet as the lender, the SPCs would hold the legal title to the promissory note and the student/borrower would be obligated to repay the SPCs. (PSMF ¶¶ 39, 40; RRSMF ¶¶ 39, 40.) Once the borrower was approved for the requested financial aid, the school would direct Nelnet to forward the loan funds to the school for disbursement to the student's account. (PSMF ¶ 43; RRSMF ¶ 43.) The SPCs also acquired student loans from lenders to whom other Nelnet entities provided

---

[2] Each entity was assigned separate tax identification numbers, except for entities organized as limited liability companies that were 100% owned by the parent company, Nelnet. (PSMF ¶ 4; RRSMF ¶ 4.)

marketing and/or origination services, and/or from lenders who had agreed to sell loans to the SPCs. (RRSMF ¶ 45-46.)

III. *Petitioners' Maine Loan Activities*

Petitioners have maintained an office in Portland since 2001, staffed during the Contested Tax Years by employees of Nelnet Marketing Solutions, Inc., Nelnet Loan Services, Inc., Nelnet, Inc., and Nelnet Corporation. (PSMF ¶¶ 16-17; RRSMF ¶¶ 16-17.) During the Contested Tax Years, between 6 and 14 employees worked in the Maine office. (PSMF ¶ 18; RRSMF ¶ 18.) During the Contested Tax Years, petitioners offered loans to Maine residents for post-secondary education in schools both within and outside of Maine. (RRSMF ¶ 19.) For a period in 2003, employees in the Maine office administered parts of the loan origination process, including marketing and solicitation activities and data entry in connection with student loans that petitioners funded and disbursed to Maine colleges and universities. (PSMF ¶ 19; RRSMF ¶ 19.) In the spring of 2004, these activities were relocated from the Maine office to other offices throughout the country. (PSMF ¶ 20; RRSMF ¶ 20.) Prior to 2001, all activities related to petitioners' student loan business were performed in offices located outside of Maine. (PSMF ¶ 21; RRSMF ¶ 21.)

During the Contested Tax Years, certain SPCs received interest and servicing fees from loans to Maine residents ("Maine Student Loan Income"). (PSMF ¶ 22.) Because not all Maine residents receiving student loans attended colleges or universities in Maine, these loans were disbursed to schools both within and outside of Maine. (PSMF ¶ 22.) Certain SPCs also received interest and servicing fees generated by student loans that were acquired by the SPCs, but were originally funded and disbursed by other lending intuitions. (PSMF ¶ 22.)

During 2003 and 2004, National Education Loan Network (NELN), a separate legal entity with its own tax identification number, received interest generated by student loans funded and disbursed to Maine residents attending colleges or universities both within and outside of Maine, by NELN or other lending institutions, whose loans NELN subsequently acquired. (PSMF ¶¶ 24-25; RRSMF ¶¶ 24-25.) NELN had a line of credit so that it could fund loans for a temporary 30-90 day period until the loan could be fully funded. (PSMF ¶ 26; RRSMF ¶ 26.) All federally-guaranteed student loans initially funded and temporarily held by NELN were ultimately transferred to an SPC. (PSMF ¶ 27; RRSMF ¶ 27.)

In 2004 Nelnet, Inc. received servicing fees generated by loans funded and disbursed to schools attended by Maine residents both within and outside of Maine. (PSMF ¶ 28; RRSMF ¶ 28.) Other than NELN and Nelnet, Inc., all of the entities in Nelnet's unitary business receiving interest and servicing fees related to student loans to Maine residents attending schools both within and outside of Maine in 2002, 2003, and 2004, were SPCs. (PSMF ¶¶ 29-30; RRSMF ¶¶ 29-30.)

Petitioners filed a single Maine combined corporate income tax return for 2001, and each of the Contested Tax Years, listing each taxpayer entity in its Combined Report, including the SPC that received interest and servicing fees. (PSMF ¶ 47; RRSMF ¶ 47.) In 2001, one SPC, MELMAC, sourced $27,080,819 in sales to Maine, an amount petitioners contend was erroneous and for which they could have demanded a refund. (PSMF ¶ 48; RRSMF ¶ 48.) Subsequent to 2001, petitioners ceased reporting Maine sales. (PSMF ¶ 49; RRSMF ¶ 49.)

IV. *The Assessment*

On May 18, 2006, the MRS issued an Assessment of Income Tax, Interest and Penalties for $600,428.96, based upon Nelnet's failure to include Maine Student Loan

Income in the Maine sales factor numerator during the Contested Tax Years. On January 29, 2007, on reconsideration, the Assessor upheld the assessment based on its determination that interest and servicing fees received by SPCs during the Contested Tax Years were "incidental" to Maine sales, and properly includable in the numerator of the sales factor. See Me. Dep't of Admin. & Fin. Serv., 18 125 CMR 801.06(A). Pursuant to 36 M.R.S. § 151 (2007), petitioners seek judicial review of this decision.

## STANDARD OF REVIEW

> [A]lthough summary judgment is no longer an extreme remedy, it is not a substitute for trial. It is, at base, "simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding." If facts material to the resolution of the matter have been properly placed in dispute, summary judgment based on those facts is not available except in those instances where the facts properly proffered would be flatly insufficient to support a judgment in favor of the nonmoving party as a matter of law.

Arrow Fastener Co. v. Wrabacon, Inc., 2007 ME 34, ¶ 18, 917 A.2d 123, 127 (quoting Curtis v. Porter, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22).

In reviewing final determinations of the State Tax Assessor, the Superior Court shall review the case

> in accordance with the Maine Administrative Procedures Act, except that Title 5, sections 1106 [power of the court to modify the record] and 1107 [manner and scope of review] do not apply. The Superior Court shall conduct a de novo hearing and make a de novo determination of the merits of the case. Either the taxpayer or the assessor may raise on appeal in Superior Court any facts, arguments or issues that relate to the assessor's decision on reconsideration, regardless of whether the facts, arguments or issues were raised during the reconsideration proceeding being appealed, provided that the facts, arguments or issues are not barred by any other provision of law. The court shall make its own determination as to all questions of fact or law, regardless of whether the questions of fact or law were raised during the reconsideration proceeding. The Superior Court shall enter such orders and decrees as the case may require. The burden of proof is on the taxpayer.

36 M.R.S. § 151.

## DISCUSSION

The question in this case is the correct percentage of petitioners' income that is subject to Maine corporate income tax. The applicable statute is 36 M.R.S. § 5211. Corporate taxpayers that have income from business that is taxable both within and outside of Maine are required to apportion their net income on the basis of a statutory formula. See 36 M.R.S. § 5211(1). Section 5211(8), at the time of the Contested Tax years, provided that "[a]ll income shall be apportioned to this State by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus twice the sales factor, and the denominator of which is 4." Id. at § 5211(8). Essentially, the issue in this case is the proper computation of the sales factor.

Section 5211(14) provides that the "sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this State during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period." Sales, for the purposes of calculating the sales factor, are "all gross receipts of the taxpayer." 36 M.R.S. § 5210(5).[3]

Only sales "in this State" are included in the sales factor numerator. Section 5211(16)[4] provides that a sale is "in this State" if: 1) "[t]he income-producing activity is performed in this State," or 2) "[t]he income-producing activity is performed both in and outside this State and a greater proportion of the income-producing activity is performed in this State than in any other state, based on costs of performance." Both

---

[3] "Gross receipts" means

the gross amounts realized (the sum of money and the fair market value of other property or services received) on the sale or exchange of property, the performance of services, or the use of property or capital (including rents, fees, royalties, interest and dividends) in a transaction that produces income, in which the income or loss is recognized (or would be recognized if the transaction were in the United States) under the Internal Revenue Code.

Me. Dep't of Admin. & Fin. Serv., 18 125 CMR 801.06(B).

[4] Which was repealed and replaced with section 5211(16-A) on June 7, 2007, after this assessment.

parties appear to agree that the Maine Student Loan Income constitutes "sales other than tangible personal property," and therefore falls under 36 M.R.S. § 5211(16).[5] Thus, the specific issue is where the "income-producing activity" giving rise to the Maine Student Loan Income was performed.

I. *Whether Interest and Servicing Fees Were "Incidental" to Maine Sales?*

The Assessor's reconsideration decision determined that the Maine Student Loan Income was "incidental" to petitioners' Maine sales. See Me. Dep't of Admin. & Fin. Serv., 18 125 CMR 801.06(A). Rule 801.06(A) provides, in pertinent part, that "[i]nterest income, service charges, carrying charges or time-price differentials incidental to a sale must be included as sales in the state to which the sale is attributable, regardless of the place where the accounting records are maintained or the location of the contract or other evidence of indebtedness." The Assessor argues that, under this provision, Maine Student Loan Income is "incidental" to the underlying "sale" at issue: the Maine Loans.[6]

The Assessor's argument is unpersuasive. To fall within Rule 801.06(A), Maine Student Loan Income would have to be incidental "to a sale." Me. Dep't of Admin. & Fin. Serv., 18 125 CMR 801.06(A). Maine Loans cannot fall within the definition of a sale, which is defined as "gross receipts"—essentially income. See 36 M.R.S. § 5210(5); Me. Dep't of Admin. & Fin. Serv., 18 125 CMR 801.08(B) ("gross amount realized (the sum of money and the fair market value of other property or services received) on the sale or exchange of property, the performance of services, or the use of property or capital (including rents, fees, royalties, interest and dividends) . . ."). Thus, Maine

---

[5] (See State's Opp'n to Pet'r Mot. at 11-13) (arguing that, even assuming Rule 801.08(A) does not apply, the Maine Student Loan Income itself constitutes Maine sales, and should be sourced to Maine under the plain language of 36 M.R.S. § 5211(16)).

[6] Maine Loans refers to "(1) the student loans that [the SPCs, NELN and Nelnet, Inc.] funded and dispursed to Maine colleges and universities, and (2) student loans that were originally funded and dispursed to Maine colleges and universities by other lending institutions, but were subsequently acquired by the SPCs or NELN." (State's Opp'n Mot. at 2.)

Student Loan Income is not "incidental" to any "sale." Indeed, Maine Student Loan Income is the predominant purpose of the loan transaction, and the predominant, if not the only, "receipt" from loans to Maine residents.

Moreover, notwithstanding the parties' assertions regarding the applicability and validity of Rule 801.06(A) to this case, resolution of this case ultimately requires a determination of where "income producing activity" was performed. See 36 M.R.S. § 5211(16); Me. Dep't of Admin. & Fin. Serv., 18 125 CMR 801.06(A) ("[i]nterest income . . . incidental to a sale must be included as sales in *the state to which the sale is attributable*") (emphasis added). This determination—where the "income producing activity" occurred—essentially hinges upon two queries: 1) What entities are properly considered in the analyzing "income producing activities"?; and 2) What are "income producing activities"?

II. *What entities should be considered in evaluating "Income Producing Activities"?*

Section 5211(14) provides that "[t]he sales factor is a fraction, the numerator of which is the *total sales of the taxpayer* in this State." 36 M.R.S. § 5211(14) (emphasis added). In determining, for the purposes of calculating the numerator of the sales factor in section 5211(14), whether each individual corporation or the entire unitary business is "the taxpayer," statutory language provides a useful guide. "'Taxpayer' means any person required to file a return under this Title or to pay, withhold and pay over or collect and pay over any tax imposed by this Title." Id. at § 111(7). The term "person" includes a "corporation,"[7] id. at § 111(3), and an income tax return is required to be filed by "[e]very taxable corporation that is required to file a federal income tax

---

[7] "'Corporation' means any business entity subject to income taxation as a corporation under the laws of the United States," with certain enumerated exceptions. 36 M.R.S. § 5102(6).

return." Id. at § 5220(5). Affiliated corporations engaged in a unitary business,[8] like petitioners', file a combined report listing in aggregate and by corporation federal taxable income, property, payroll, and sales. See 36 M.R.S.A. §§ 5220(5), 5244; Great Northern Nekoosa Corp. v. State Tax Assessor, 675 A.2d 963, 965 (1996).[9] This language appears to demonstrate that the term "taxpayer," for purposes of calculating the sales factor numerator, refers to each individual Maine nexus corporation, rather than an entire unitary business. In Greater Northern Nekoosa, the Law Court held that the term "taxpayer" as used in the "throwback rule," 36 M.R.S. § 5211(15), for the purposes of calculating the sales factor numerator, did not refer to an entire unitary business group. 675 A.2d at 966. Although Greater Northern Nekoosa involved section 5211(15), the underlying issue—who is the "taxpayer" for purposes of the sales factor numerator?—was the same. Therefore, this court concludes that "taxpayer," for purposes of calculating the sales factor numerator in section 5211(14), is limited to only those corporations in the unitary business that have a Maine nexus. As it is undisputed that the Maine Student Loan Income was received by the SPCs, NELN and Nelnet, Inc., (see PSMF ¶¶ 22, 24, 25, 28), these entities are the "taxpayers" at issue.

Resolution of this issue, however, does not determine whether, under 36 M.R.S. § 5211(16), the sales of "the taxpayers"—the SPCs, NELN, and Nelnet, Inc.—are in this State. This issue requires a determination of where the "income producing activity" giving rise to the Maine Student Loan Income was performed. The term "income-

---

[8] "Unitary business" means "a business activity which is characterized by unity of ownership, functional integration, centralization of management and economies of scale." Id. at § 5102(10-A). In the case of a unitary business carried on by 2 or more members of an affiliated group, such as Nelnet Group, the "Maine net income of a corporation is determined by apportioning that part of the federal taxable income of the entire group that derives from the unitary business." Id. at § 5102(8).

[9] The aggregate income on the combined report is apportioned in accordance with the statute, and the corporate taxpayer includes the Maine share of income on its Maine tax return. Tambrands v. State Tax Assessor, 595 A.2d 1039, 1044 (Me. 1991).

producing activity" is not defined by statute. Rule 801.01(E) defines "income-producing activity" as:

> each separate item of income and the transactions and activity directly engaged in by the taxpayer for the ultimate purpose of obtaining gain or profit. For income apportionment purposes, such activity does not include transactions and activities performed on behalf of a taxpayer, such as those conducted on the taxpayer's behalf by an independent contractor. Income-producing activity includes, but is not limited to:

>> (1) The rendering of personal services by employees or the utilization of tangible and intangible property by the taxpayer in performing a service;

>> (2) The sale, rental, leasing or licensing the use of, or other use of real property; and

>> (3) The rental, leasing, licensing the use of, or other use of tangible or intangible personal property.

Me. Dep't of Admin. & Fin. Serv., 18 125 CMR 801.01(E).

The Assessor argues that the court may only consider the "income producing activities" in which the taxpayers themselves (the SPCs, NELN, and Nelnet, Inc.) are engaged, and not the activities engaged in by others on the taxpayers behalf. The Assessor points to the definition of "independent contractor," which, under Rule 801.10(E), "means any individual who performs services for a taxpayer but who is not an employee of the taxpayer, and who is not otherwise subject to the supervision or control of the taxpayer in the performance of the services." Id. at 801.10(E).[10] The Assessor argues that activities performed on behalf of the SPCs by employees of other entities in petitioners' unitary business may not be considered. This, according to the

---

[10] The "independent contractor" provision cited to by the Assessor is found in the provision providing for the calculation the *payroll factor*. Me. Dep't of Admin. & Fin. Serv., 18 125 CMR 801.10(E). Petitioners argues that this definition, which is used for determining whether an *individual* is an independent contractor or an employee, is not applicable to a determination of whether Nelnet Group *entities* should be treated as independent contractors of the SPCs.

Assessor, leaves only the activities undertaken by the SPCs, NELN, and Nelnet, Inc. to be considered as "income producing activities."

Nelnet argues that the provision of Rule 801 excluding independent contractors from consideration in determining "income producing activities" impermissibly limits 36 M.R.S. § 5211(16) by adding a restriction not found in the statutory text, and should be rejected. See UAH-Hydro Kennebec, L.P. v. State Tax Assessor, 659 A.2d 865, 867 (Me. 1995) (rejecting the Assessor's attempt to add a requirement to the sales and use tax exemption statute); see also Gen. Motors Corp. v. Dep't of Taxation, 602 S.E.2d 123 (Va. 2004) (finding a similar department rule impermissibly narrowed the plain language of a statute because "[n]othing in the language [of the statute] limits costs of performance to direct costs or suggests that the Department may exclude costs incurred for activities performed on behalf of a taxpayer by a third party").

Assuming Rule 801's exclusion of independent contractors is valid, the activities of other Nelnet Group entities cannot be excluded because they are not akin to activities conducted by an independent contractor. See California Franchise Tax Board, Legal Ruling 2006-02, at *5 (May 3, 2006) (finding that "when the contractor and subcontractor are in a unitary relationship and are members of the same combined reporting group, the activities of the subcontractor will be considered income producing activities *directly* engaged in by the contractor"). Because the activities undertaken by petitioners are all integral parts of the activity directly engaged in by the SPCs for the ultimate purpose of obtaining Maine Student Loan Income, they constitute "income producing activities." The SPCs can only function as lenders in concert with other Nelnet Group entities as part of the Nelnet Group.[11]

---

[11] Logically, Rule 801's exclusion of costs of activities performed "on behalf" of corporate taxpayers could not exclude all possible actors who perform services on behalf of taxpayers. This is because a corporation

Accordingly, although only the Maine-nexus corporations of petitioners' unitary business are the "taxpayers" for purposes of calculating the sales factor numerator pursuant to section 5211(14), all income-producing activities performed by employees in the entire Nelnet Group on behalf of SPCs, NELN, and Nelnet, Inc. must be considered in determining where to situs the Maine Student Loan Income under 36 M.R.S. § 5211(16). Petitioners' Cost of Performance Study,[12] which properly includes all income-producing activities performed by Nelnet entities in the petitioners' unitary business, demonstrates that the cost to perform the income-producing activity was greater in a state other than Maine. See 36 M.R.S. § 5211(16)(B). Consequently, the Maine Student Loan income cannot be sitused to Maine, see id., and summary judgment in favor of the petitioners is appropriate.

---

is an artificial legal entity that can only act through its members, officers, or agents. See Shanny v. Androscoggin Mills, 66 Me. 420, 424 (1876) (holding a corporation can "only act by servants or agents"). A corporation can never literally perform an act for itself, and thus the "on behalf of" limitation cannot be read to exclude all actors acting on behalf of the corporation. Therefore, under the Assessor's own interpretation, the officers and directors of the SPCs and NELN, which have the authority to carry out the business affairs of the SPCs and NELN, would have to be considered. It is undisputed that none of the activities of the officers and directors of the SPCs or NELN occurred in Maine. (PSMF ¶¶ 87, 88.)

[12] The Assessor only contests that the COP study improperly includes income-producing activities performed by non-SPC employees. (See, e.g., PSMF ¶¶ 53-117; State's Opp'n SMF ¶¶ 53-117.) This issue was essentially the basis for the Assessor's motion to exclude. (See State's R. Mot. to Exclude Expert Test. at 1-2.) Thus, while the Assessor disputes the relevancy of the COP study, the Assessor has not otherwise objected to the accuracy or methodology used. (See Resp't Opp'n at 9.) Because, based upon the reasoning articulated in this decision, the COP study properly includes all income-producing activities performed by Nelnet entities in the unitary business, and is otherwise uncontested, there remains no issue of material fact.

The entry is:

The petitioners' Motion for Summary Judgment is GRANTED. The State Tax Assessor's Motion for Summary Judgment is DENIED. The State Tax Assessor's January 29, 2007 Reconsideration Decision is VACATED and REMANDED for an abatement of the Maine income tax (plus associated interest and penalties) assessed against petitioners for tax years 2002, 2003, and 2004.

December 8, 2008

Justice Joseph Jabar

Date Filed __02/27/07__      Kennebec      Docket No. __AP-07-24__

County

Action __Petition For Review__
              80C

**J. JABAR**

Nelnet, Inc., et al        vs.      State Tax Assessor

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Sarah H. Beard, Esq.<br>Pierce Atwood<br>One Monument Square<br>Portland, ME 04101 | Kelly L. Turner, AAG<br>6 State House Station<br>Augusta, Maine 04333-0006 |

| Date of Entry | |
|---|---|
| 2/28/07 | Petition For Review And De Novo Determination, filed 2/27/07. s/Beard, Esq. |
| 3/13/07 | Replaced Exhibit B, filed. s/Beard, Esq. |
| 3/15/07 | Letter entering appearance, filed. s/Turner, AAG    **(no record to be filed)** |
| 4/18/07 | Notification of Discovery Service, filed. s/Turner, AAG<br>State Tax Assessor's First Request for Production of Documents; State Tax Assessor's First Set of Interrogatories to Petitioner, served on S. Beard, Esq. on 04/17/07. |
| 4/20/07 | Joint Motion For An Order To Specify The Future Course Of Proceedings, filed. s/Beard, Esq. s/Turner, AAG<br>Proposed Order, filed. |
| 4/26/07 | ORDER SPECIFYING FUTURE COURSE OF PROCEEDINGS, Marden, J.<br>Discovery to close within 8 months of date of order. Motions to be filed within 2 months of close of discovery.<br>Copies mailed to attys of record. |
| 7/30/07 | Petitioner's Response to State Tax Assessor's First Request for Production of Documents served on Kelly L. Turner, AAG on 7/27/07 |
| 8/14/07 | Notification of Discovery Service, filed 8/13/07. s/Beard, Esq.<br>Petitioner's Answers to State Tax Assessor's First Set of Interrogatories to Petitioners, served on K. Turner, AAG on 8/10/07. |
| 8/23/07 | Notification of Discovery Service: Petitioners' Designation to Expert Witness served on Kelly L Turner on August 22,2007. Filed by S.Beard Esq. |
| 10/4/07 | 10/1/07: Notification of Discovery Service: State Tax Assessor's Second Request for Productionof Documents served on Sarah Beard on 9/28/07 filed by K Turner AAG |
| 10/24/07 | Notification of Discovery Service, filed. s/Turner, AAG<br>Notice of Deposition of Nelnet, Inc., served on S. Beard, Esq. on 10/19/07. |
| 10/29/07 | Notification of Discovery Service, filed. s/Turner, AAG<br>Notice of Deposition of Darren J. Hurlbury,CPA served on Sarah H. Beard, Esq. on 10/26/07. |

| Date of Entry | Docket No. _____ |
|---|---|
| 10/30/07 | Notification of Discovery Service, filed. s/Beard, Esq.<br>Petitioners' Response to State Tax Assessor's Second Requests for<br>Production of Documents served on Kelly L. Turner, AAG on 10/29/07 |
| 11/20/07 | Notification of Discovery Service: First set of Interrogatories to<br>Respondent State Tax Assessor Propounded by Petitioners served on Kelly<br>Turner on November 19,2007. filed by S Beard |
| 11/27/07 | Petitioners first request for production of documents served on Kelly<br>Turner on 11/26/07, filed by Atty Beard on 11/27/07. |
| 12/12/07 | Filed 12/06/07: Respondent's Consented to Motion to Modify<br>Scheduling Order filed by AAG Turner. |
| 12/14/07 | ORDER MODIFYING SCHEDULING ORDER, Marden, J. (12/13/07<br>The discovery deadline is extended to 2-23-08 and all subsequent deadl:<br>are hereby extended by two(2) additinal months.<br>Copies mailed to attys. of record. |
| 12/26/07 | Notification of Discovery Service, filed. s/Turner AAG<br>State Tax assessor's Answers to Petitioners' First Set of Interrogatori<br>and State Tax's assessor's Response to Petitioners' First Request for<br>Production of Docuements served on sarah H. Beard, Esq. on 12/21/07. |
| 12/29/07 | Letter notifying the Court of withdrawal as co-counsel. s/Good, Esq. |
| 2/14/08 | Notification of Discovery Service, filed. s/Beard,AAG<br>Notice of Deposition of State Tax Assessor Pursuant to Rule 30(b)(6)<br>served on Kelly L. Turner, AAG on 2/12/08. |
| 4/22/08 | Petitioners' Motion for Summary Judgment, filed. s/Beard, Esq.<br>Memorandum of Law in Support of Petitioners' Motion for Summary Judgmen ,<br>filed. s/Beard, Esq.<br>Petitioners' Supporting Statement of Material Facts not in Dispute, fil d.<br>s/Beard, Esq.<br>Affidavit of Scott M. Gubbels, filed. s/Gubbels<br>Affidavit of Darren J. Hurlburt, s/Hurlburt<br>Proposed Order, filed.<br>Request for Hearing, filed. s/Beard, AAG<br><br>Notice of setting for 5/6/08<br>sent to attorneys of record |
| 4/23/08 | State Tax Assessor's Motion for Summary Judgment with Incorporated<br>Memorandum of Law, filed. s/Turner, AAG<br>State Tax Assessor's Statement of Material Favts, filed. s/Turner, AAG<br>Proposed Decision and Order, filed.<br>Request for Hearing, filed. s/Turner, AAG<br><br>State Tax Assessor's Motion to Exclude Expert Testimony of Darren J.<br>Hurlburt, CPA, with Incorporated Memorandum of Law, filed. s/Turner, AAG<br>Proposed Order, filed.<br>Depositions of Scott Gubbels and Darren Hurlbert, filed. |
| 5/5/08 | Respondent's Unopposed Motion for Enlargement of Time to File<br>Opposition to Petitioners' Motion for Summary Judgment with Incorporated<br>Memorandum of Law, filed. s/Turner, AAG<br>Proposed Order, filed. |

| Date of Entry | Nelnet, Inc., et al vs. State Tax Assessor Docket No. AP07-24 |
|---|---|
| 5/12/08 | ORDER, Jabar, J.<br>Granted. Extended to June 6, 2008.<br>Copies to attys. of record. |
| 5/20/08 | Petitioners' Memorandum in Opposition to State Tax Assessor's Motion to Exclude Expert Testimony of Darren J. Hurlburt, CPA, filed. s/Beard, Esq. (filed 5/14/08)<br><br>State Tax Assessor's Reply Memorandum in Support of His Motion to Exclude Expert Testimony of Darren J. Hurlburt, filed. s/Turner, AAG |
| 6/5/08 | Petitioner's Objection and Incorporated Memorandum of Law in Opposition to Respondent's Motion for Summary Judgment, filed. s/Beard, Esq.<br>Petitioners' Rule 56(h)(2)Statement in Respondent's Statement of Material Facts, filed. s/Beard, Esq.<br>Supplemental Affidvit of Scott M. Gubbels, filed. s/Gubbels |
| 6/6/08 | State Tax Assessor's Opposition to Petitioners' Motion for Summary Judgment, filed. s/Turner, AAG<br><br>State Tax Assessor's Opposing Statement of Material Facts, filed. s/Turner AAG |
| 6/13/08 | Petitioners' Reply Memorandum in Support of Their Motion for Summary Judgment, filed. s/Beard, Esq.<br>Petitioners' Reply Statement of Material Facts, filed. s/Beard, Esq. |
| ------- | State Tax Assessor's Reply Memorandum in Support of his Motion for Summary Judgment, filed. s/Turner, AAG<br>State Tax Assessor's Response to Petitioners' Statement of Additional Material Facts, filed. s/Turner, AAG |
| | Notice of setting for _8/5/08_<br><br>sent to attorneys of record. |
| 12/8/08 | DECISION AND ORDER, Jabar, J.<br>The petitioners' Motion for Summary Judgment is GRANTED. The State Tax Assessor's Motion for Summary Judgment is DENIED. The State Tax Assessor's January 29, 2007 Reconsideration Decision is VACATED and REMANDED for an abatement of the Maine income tax (plus associated interest and penatlties assessed against petitioners for tax years 2002,2003, and 2004.<br>Copies mailed to attys. of record. |